Good morning, Counsel. Good morning, Your Honor, and may it please the Court. My name is Ashley Gebeke from Pepperdine Law School, and along with Tracy Smith, I represent the appellant, Ms. Wendy Alguard. We would like to reserve four minutes of my time for my co-counsel's rebuttal. All right. No reasonable fact finder could find that the USDA had shown independent causation by clear and convincing evidence for four reasons. First, the AJA's decision to reassign her. Second, the AJA's decision does not mention the material 12-day time period that separates the cancellation of the Snokas contract from the USDA's decision to reassign Ms. Alguard. And third, the AJA's decision does not address Ms. Alguard's allegation that her supervisor told her to ignore the Snokas misconduct. And fourth, the AJA improperly under the third-car factor. To my first point, addressing the causal link, the text of the Whistleblower Protection Act states that its purpose is to encourage, the purpose of the Act is to strengthen and improve protection for whistleblowers and to help eliminate wrongdoing within the government by mandating that employees should not suffer adverse consequences as a result of a prohibited personnel practice. So when a whistleblower says they've suffered an adverse consequence, as I understand it, the government can defend by saying it's exactly the same consequence you would have suffered had you not been a whistleblower. Is that a fair summary of the case law? Yes, Your Honor. And there was a hearing and the ALJ said I hear the evidence on both sides. You've got some good evidence, whistleblower, but there's some other evidence that I find that in the end you were treated the same way you would have been treated had you not been the person who blew the whistle. How do we review that determination? That's a factual determination, is it not? Yes, Your Honor. And we review it for substantial evidence? Yes, Your Honor. So is your position that there was no evidence that supports the ALJ's finding? Yes, Your Honor. Well, a lot of people were transferred. Yes, Your Honor. So it can't just, so even if she weren't the whistleblower, I mean, I know you make a separate argument, I want to put it aside, that if she hadn't blown the whistle in the first place, nobody would have been transferred. Put that aside for a second. Given once the disclosure was made, it was inevitable that some people would be transferred, correct? No, Your Honor. It was not inevitable that some people would be transferred. Why? The contract with the USDA was canceled. There was, they no longer had inspection duties at this particular location. She wasn't the only person transferred. Others were too. Yes, Your Honor. However, the situation at the Yakima Duty Station, the overstaffing to which the Snow Kiss contract cancellation contributed, had been ongoing for months, if not years. The Yakima Duty Station was losing money, and Mr. Augsburg was content to do nothing. He was... So is it one of your arguments that they just should have kept the overstaffing and not transferred anybody? No, Your Honor. It's not Ms. Allgaard's place to determine internal USDA response to business needs, but whatever action the USDA took, it had to comply with federal law, and the record shows that there were actions that the USDA could have taken that both would have complied with the WPA's mandate and protected Ms. Allgaard. What were those actions, counsel? Your Honor, the USDA could have considered, as it did in 2005, a wider geographic area, and the record shows that if they had done so, Ms. Allgaard would not have been the most junior personnel identified, and that thus she could have retained her job, the WPA could have been upheld, and yet the USDA could have addressed its legitimate overstaffing issue. Yeah, but then don't you have to show that their failure to... that their decision to address the wider, narrower geographic area was motivated, was in response to her whistleblowing? See, that's one of the problems I'm having with your argument. They made a decision. It may have been the right decision or the wrong decision about how big an area to consider. Lots of people got transferred, and so the question is, how do we... how do you show there's... how do we determine that there's no evidence at all that she would have been treated the same way in the absence of her whistleblowing? How do we tie her whistleblowing to the actions that occurred? Your Honor, this point has been conceded by the both note that the Snokus contract cancellation led to the USDA's decision to reassign Ms. Allgaard. Nobody doubts that... nobody doubts that the contract cancellation occurred because of your client's admirable efforts. My question is different. My question is, how can you show that her transfer occurred because of whistleblowing in a way that it wouldn't have occurred had someone else blown the whistle? Your Honor, because the USDA conceded that there was a causal link between the Snokus contract cancellation and its decision to reassign... to make any reassignment. But see, I think we're missing each other, so let me try one more time. Everybody agrees in this case that the the transfers occurred because of the contract cancellation. My question is a different one. Given that... let's assume the contract cancellation occurred for a perfectly plain vanilla reason. The USDA stopped doing business with this company. Can you show me why your client was treated differently under this circumstance than she would have been treated under the circumstance where they just terminated the contract? Your Honor, the question is not whether she was treated differently. The question is whether the action that the USDA took violated the WPA's mandate that she not face an adverse personnel action because she had made the disclosures. Because of that causal link that connects her disclosures to the cancellation of the contract to her reassignment... Then your argument has to be that any adverse action that occurred because of the cancellation of the contract is illegal, even if she was treated the same or better than all other employees. Is that your argument? Yes, Your Honor, because it violates the text... Okay, tell me what case supports that. Your Honor, the plain text of the WPA supports that. And also, I'm sorry, my time is about to expire. Is it all right if I briefly conclude? Yes, please. The text of Morano v. Department of Justice states that the Whistleblower Protection Act also protects a whistleblower in a case where they're ensnared in the corrective actions that the agency takes to address their own disclosures. And thus, she is protected by any agency action that it takes in response to the overstaffing caused by her disclosures. Your Honor, I would like to reserve the rest of my time for my co-counsel's rebuttal. Thank you. Good morning, Your Honors. Rudy Vershoor from the Eastern District of Washington, representing the Department of Agriculture. May it please the Court and Counsel, this Court should affirm the MSPB decision. There was more than adequate, there was actually overwhelming evidence that the loss of the contracts over the year and a half or so prior to Ms. Algar's disclosure were resulting in a tremendous loss of revenue in the hundreds of thousands of dollars. And then her disclosure, as you pointed out, ended up with the snow kiss contract being canceled. And then there was several others. I mean, I can recite which contracts there were. But ultimately, what happened is the agency is overstaffed under budget now and they need to do something. And this agency... Well, what's your response, though, that if the whistleblower, if the result of the whistleblower's whistleblowing requires a layoff, that you cannot lay off the whistleblower because that would be a violation of the statute? That's an incorrect interpretation of the statute by the appellant. That would really, that situation would be a strict liability that if there's... That's what I understand they're saying. It's a strict liability statute because if a mine inspector goes in and finds serious safety violations that he or she knows will result in the mine closing down, the argument might be, well, they'd be reluctant to disclose that because they're going to lose their job because the mine closed down. Or in this case, they lose their job because they lose the contract for the agricultural inspection services. And we understand that. This was an unfortunate situation where she disclosed something that ultimately resulted in it. But how do you respond to her? How do you respond to counsel's argument? I mean, Judge Malloy has done a nice job of distilling it. What she's basically saying is, you can't take an adverse employment action against me that arises, that was caused by my whistleblowing. And that is, I believe, not the correct interpretation of the case. Besides having to prove this causal relationship, which is what has been argued here, there has to be retaliatory intent. And in this case, Ms. Allgaard was caught up in an unfortunate reduction in the number of people that the Yakima duty station and the agency had the duty to reassign because they're over budget, over staff. And where Ms. Allgaard's case fails is the retaliation isn't shown. The only link she has shown is the timing between her disclosure regarding the moldy applesauce totes and the reassignment decision. But all that gives you is an inference that there may be some retaliation. Whose burden is it under these circumstances to show either retaliation or the absence of retaliation? It's the appellant's version to show that there is actually a retaliatory motive. And that's where her case really unravels is because there isn't... to opposing counsel's observation that prior to the whistleblowing, there were problems with closures and the agency elected not to transfer anyone and only decided to transfer after she acted as a whistleblower. What's your response to that argument? Which would show retaliatory impetus? The record, in fact, shows that Mr. Augsburg, who is the officer in charge, the supervisor at the Yakima duty station, had already looked at this. They had lost the Simmons food contract, who had gone bankrupt, Yakima juice, Twin City Foods. Those losses were $600,000. But were any layoffs effectuated before the whistleblowing activities of Ms. Allgaard? No, Your Honor. There was one retirement at one facility at the Lamb Weston plant. There was going to be an assignment of one of the employees to the Del Monte plant, and they were waiting for a retirement of a Mr. Pierce. But those didn't happen in time. And so when the Snokiest contract got canceled, suddenly they're completely over budget. So what do we do with the ALJ's finding that there was evidence of a retaliatory motive? The ALJ, there's a three-part test. Yes. The ALJ says the government, you're better off on two parts than on the third part. I do find evidence of a retaliatory motive. Why isn't, is, what do we do with that? Well, for one, you will recall that he found that the evidence of retaliation was weak, and he described it as weak. And he gave it. He did find that it cut in favor of Ms. Allgaard. He did, but it was very weak. What I think the ALJ did not do is look at all those other things that negate that there was retaliation. Well, but we can't do what the ALJ did not do. In other words, we're reviewing the ALJ's finding. We can't add findings or subtract them from the ALJ. So my question is, once the ALJ finds that on the second factor here, the motive to retaliate, the evidence weighs in favor of the petitioner, why doesn't that end the analysis? Because you have to consider the three factors in CAR. And the judge, the ALJ, found heavily that there was evidence that the agency would have taken the same action. So even if you have a motive to retaliate, but it turns out even in the absence of that motive, you would have done the same thing, then it's okay? The direction in CAR and the cases since then is that the judge balances those, or considers all three. So there was some motive of retaliation, but there was overwhelming evidence that the agency would have taken the same action without the whistleblowing. And then the third factor, the similarly situated, the agency on remand submitted a tremendous amount of evidence of 30 employees, 13 of which were exactly what Ms. Allgaard was, agricultural commodity graders. They, where they were working was downsizing. They ended up being reassigned, but they were not. I take it Ms. Allgaard's argument with respect to the third part, although I don't want to put words in counsel's mouth, is that none of those purportedly similarly situated employees had been whistleblowers. Assume that's the argument. How do you respond to that? That they were not whistleblowers? Yeah. I think that is correct because... So can they be similarly situated if they weren't whistleblowers? Well, I think everything up except for that... You assume that they're otherwise similarly situated. But that's the analysis. You have to look, did this agency treat Ms. Allgaard differently than somebody who wasn't a whistleblower? And the analysis is no, she was treated exactly the same had there not been any analysis or any whistleblowing. And that's the analysis you go through. And I think the cases are very clear. These employees were similarly situated. They were agricultural commodity graders that lost... Or where they were working had a reduction in business. And so they were similarly situated and then they were reassigned. That makes them similarly situated. Can I ask you a jurisdictional question? I don't believe I have cited or argued this Avelius case, A-V-I-L-E-S, if I'm pronouncing it correctly, from the Fifth Circuit. Are you familiar with that case? I am not, Your Honor. Well, that case basically stands for the proposition that the Fifth Circuit has said that the statute does not even apply when the bad conduct is by a private individual as opposed to a government employee. And the Fifth Circuit's adopted that argument. And I think the Fed Circuit's alluded to it in a case. Are you arguing that position? We are, Your Honor. We have argued that this wasn't a whistleblowing case to begin with. The Whistleblower Protection Act... No, for the same reason. The plain language of the act... Because it shouldn't be... Because you weren't reporting government misconduct. That's correct. So my question is, can we reach that issue if the ALJ didn't? In other words, the ALJ didn't base his determination on that. Is it jurisdictional, as Judge Malloy suggests? Or if we were to rule in favor of Ms. Algard, would we just have to say, we think there's a problem, so we're remanding for you to consider it? I think the doctrine on appellate review is that this Court and any appellate court can decide the case on any matter supported by...  By administrative... Administrative... ...rulings? I don't know if that's an authority... I'd love if that were the rule, but I'm not sure. But we had argued that this was not a whistleblower case. No, I understand. But that would be statutory as opposed to Article III jurisdiction, wouldn't it? Would that affect Article III jurisdiction? Or whether or not the parameters of the statute were satisfied, which would be statutory jurisdiction, right? I think the latter that you described is what's at issue here, whether this even falls within the realm of that statute. And I think that's an issue that this Court could take up. And we had argued that. I see my time is up unless you have another question. It appears not. Thank you very much. Thank you, counsel. Rebuttal? Counsel, before you begin, what's your response to opposing counsel's argument that this action does not fall within the whistleblower statute because there was the whistleblowing related to a private entity as opposed to a government agency? What's your response? Your Honor, while this was a private entity, Snokest was, it was nonetheless a private entity that had a governmental contract with the USDA. And the USDA was receiving significant revenue from Snokest and had a stake in its... Yeah, but there's no allegation here that anybody, any government employee did anything wrong, is there? In other words, she didn't go in and said, I just discovered that the previous inspector was taking bribes. No, Your Honor. She said, I did my job and I found out that the applesauce is dirty, if you would. That's the fault of the private contractor, isn't it? It is the fault of the private entity. However, the WPA is looking to correct governmental wrongdoing. It is not... What would be the wrongdoing on the part of the government? I could see if maybe one of the inspectors was looking the other way while the tainted applesauce was being inspected. But what's the government wrongdoing? Well, you are correct, Your Honor, that we do have evidence that Mr. Augsburg was looking the other way. But that was not the evidence that was presented at the hearing, was it? That was not the basis for the ALJ's decision, was there? It was brought forth to the ALJ's decision. Ms. Algar did mention to the ALJ that she mentioned it to Mr. Augsburg, and he told her to mind her own business as long as it was not a USDA inspector. But the actual whistleblowing was aimed toward the private agency, the private company, not toward Mr. Augsburg, right? Correct? Correct. Okay. So what do we do with that? Your Honor, the purpose of the WPA is to correct wrongdoing within the government. And here, this is a government contract that the USDA, a government entity, had reason to cover up, had reason, had a stake in its healthy operations. Well, but let me ask the question differently. Let's assume that there is no jurisdiction here because of that, but that the ALJ didn't make his ruling on that basis. Is this a kind of jurisdictional issue that we can address sua sponte, or is it a jurisdictional issue that if we were concerned about, we would have to send it back to the agency to address? You would need to send it back to the agency to address. Well, first, Your Honor, in both the ALJ's initial and final decisions, it mentioned that the parties stipulated at the pre-hearing conference that Ms. Algar did indeed make a protected disclosure under the WPA. And the parties are bound by their... That's not the question I asked you. We all agree she made a protected disclosure for purposes of this. The question is whether or not the act applies because that disclosure didn't extend to private entities. And you're saying this stipulation, the government stipulated this issue away? I see my time has expired, but if I may respond to the question. Yes, Your Honor, the government and Ms. Algar stipulated that this is a protected disclosure, and so they moved to the third step. And your point is it wouldn't be a protected disclosure if it didn't fall under the W... Whistleblower Protection Act. Based on the reasons set forth in our brief, it is a protected disclosure under the WPA. Was there anything else you wanted to briefly discuss, counsel, in your rebuttal? Quickly, if I may, Your Honor. Thank you very much. Just to respond quickly, the USDA here bore the burden of showing clear and convincing evidence that it would have taken exactly the same action, the same decision to correct direct reassignments at this time had Ms. Algar not made any disclosures. And this applies not only to her status as a whistleblower, but also the content and subsequent effect of her whistleblowing. And that is made clear in the statute and the Federal Circuit's decision in Marano v. Department of Justice. Thus, this Court cannot say that despite all the evidence in the record, that a reasonable fact finder could nonetheless find that the USDA met its heavy burden of showing independent causation. All right. Thank you, counsel. Thank you to all counsel. And special thanks to the students from Pepperdine University for appearing here. The case just argued is submitted for decision by the Court.
judges: Rawlinson, Hurwitz, Melloy